UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

Vera J. Katz,

                    Plaintiff,                          24-cv-2047 (JGK)

          - against -                                   Memorandum
                                                        Opinion and Order
Tactile Group, Inc., et al.,

                    Defendants.
_____

JOHN G. KOELTL, District Judge:

The plaintiff/counterclaim defendant, Vera Katz, authored a memoir with the assistance of the defendants/counterclaim plaintiffs, Tactile Group, Inc. ("Tactile") and Dr. Danielle Peake. Katz brought this action seeking a declaratory judgment that she is the sole owner of the copyright in the memoir and alleging that the defendants infringed her copyright. ECF No. 1. Katz later amended her complaint to include state-law contract, tort, and fiduciary-duty claims. ECF No. 73. The defendants raised several counterclaims in response. ECF No. 76. Katz now moves to dismiss all but one of those counterclaims. ECF No. 79. For the following reasons, Katz's motion is **granted in part** and **denied in part**.

## I.

Unless otherwise indicated, the following facts are taken from the defendants' pleadings and are accepted as true for purposes of deciding Katz's motion to dismiss.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

Vera J. Katz,

                    Plaintiff,

          - against -

Tactile Group, Inc., et al.,

                    Defendants.

———————————————————

24-cv-2047 (JGK)

Memorandum
Opinion and Order

JOHN G. KOELTL, District Judge:

The plaintiff/counterclaim defendant, Vera Katz, authored a memoir with the assistance of the defendants/counterclaim plaintiffs, Tactile Group, Inc. ("Tactile") and Dr. Danielle Peake. Katz brought this action seeking a declaratory judgment that she is the sole owner of the copyright in the memoir and alleging that the defendants infringed her copyright. ECF No. 1. Katz later amended her complaint to include state-law contract, tort, and fiduciary-duty claims. ECF No. 73. The defendants raised several counterclaims in response. ECF No. 76. Katz now moves to dismiss all but one of those counterclaims. ECF No. 79. For the following reasons, Katz's motion is **granted in part** and **denied in part.**

I.

Unless otherwise indicated, the following facts are taken from the defendants' pleadings and are accepted as true for purposes of deciding Katz's motion to dismiss.

## A.

Vera Katz is a former professor of the arts domiciled in Maryland. Answer to Am. Compl. ("Answer") ¶ 9, ECF No. 76. Sometime before March 2016, Katz wrote a manuscript for a memoir titled "Telling Truths: A Toolbox of Techniques for Actors."[1] Id. ¶ 136. Katz sent her manuscript to several literary agents and publishers, but none agreed to publish the manuscript. Id. ¶ 137.

Katz turned to her former student, Danielle Peake, and Peake's company, Tactile, for help improving the manuscript, and Peake agreed. Id. ¶ 142. Both Peake and Tactile are citizens of New York. Peake and Katz agreed that Peake would act as Katz's manager, publicist, booking agent, editor, and publisher. Counterclaims ¶¶ 28, 41, 92, ECF No. 76. Katz initially agreed to compensate Peake at a rate of $75 per hour and paid at least one invoice setting this rate dated February 1, 2019. Id. ¶ 31. Sometime later, Katz agreed to increase Peake's compensation to $100 per hour. Id. ¶ 32.

In early 2018, Katz, at Peake's suggestion, agreed to retitle the book "A Katz Walk." Answer ¶ 143. And in March of 2018, Katz asked Peake to cowrite the book. Id. ¶ 145. Peake agreed. Id.

On April 8, 2019, while Katz and Peake were still working on the manuscript, Katz executed a handwritten note purporting to assign her "entire artistic legacy, including all past, present, and future works, to the ownership

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

of Danielle R. Peake and Tactile Group." Id. ¶ 19; see also id. ¶ 183. Katz confirmed this assignment in two videos dated the same day. Id. ¶ 184.

Between 2018 and 2022, Peake wrote substantial portions of original text, which Katz edited and agreed to include in the manuscript. Id. ¶ 147. With Katz's agreement, Tactile ultimately published the manuscript as A Katz Walk, which was 267 pages long and included 250 single-spaced pages of original text. Id. ¶¶ 150–52. The Tactile "publication of A Katz Walk contained at least 45 pages that Peake had written." Id. ¶ 154. According to Peake, A Katz Walk is a joint work that Katz and Peake intended to co-author.

## B.

On July 5, 2022, Katz applied for a copyright registration of A Katz Walk, which resulted in Registration No. Txu002330205. Id. ¶ 165. Katz represented in her application that the work had not yet been published. Id. ¶ 166. The defendants allege that the application contained materially inaccurate information because by July 5, 2022, Tactile had already published A Katz Walk. Id. ¶ 167. According to the defendants, Katz had helped to plan a book launch at Howard University on April 25, 2022, and thus knew that Tactile had published the memoir. Id. ¶ 170.

On July 8, 2022, the defendants applied for their own copyright registration of A Katz Walk, which resulted in Registration No. TX0009149157. Id. ¶ 187. The defendants represented in their application that "Tactile Group was the claimant of the work by written assignment." Id. ¶ 189. In response to correspondence from the Copyright Office, Peake added that the work included

3

copyrightable contributions by "Literary Contributor," which Peake alleges referred to herself. Id. ¶ 190.

## C.

Katz's relationship with Peake soon deteriorated. On September 20, 2022, Katz's lawyer purported to terminate "any and all agreements that Peake and Tactile Group could 'act as publisher, manager (artist or booking), as a publicist or in any other capacity for Professor Katz regarding A Katz Walk or otherwise.'" Id. ¶ 194. The defendants allege, however, that they had already incurred substantial costs in working to publish the memoir — costs that Katz had agreed to pay. The defendants contend that Katz agreed to pay them at least $254,000, only $30,000 of which Katz has paid. Counterclaims ¶ 35.

Katz sued Peake and Tactile, seeking a declaratory judgment that she is the sole owner of the copyright in A Katz Walk and alleging that the defendants infringed her copyright. ECF No. 1. Katz subsequently amended her complaint to include state-law contract, tort, and fiduciary-duty claims. ECF No. 73. The defendants raised several counterclaims in response. ECF No. 76. Katz now moves to dismiss all but one of those counterclaims. ECF No. 79.

## II.

A motion to dismiss a counterclaim "is evaluated using the same standard as a motion to dismiss a complaint." A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015). Accordingly, in

4

deciding a motion to dismiss a counterclaim pursuant to Rule 12(b)(6), the allegations in the counterclaim plaintiff's pleadings are accepted as true, and all reasonable inferences must be drawn in the pleader's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the [claim or counterclaim] is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). A counterclaim will survive a Rule 12(b)(6) motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [pleader] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.

Peake and Tactile bring fifteen counterclaims against Katz, which can be grouped into four categories.

First, the defendants bring five copyright-infringement counterclaims: one seeking to invalidate Katz's copyright registration (Counterclaim I); one seeking a declaratory judgment that the defendants own A Katz Walk by assignment (Counterclaim II); one seeking a declaratory judgment that Peake is a joint author of A Katz Walk (Counterclaim III); one seeking a declaratory judgment that Peake made copyrightable contributions to A Katz Walk

5

(Counterclaim IV); and one seeking a declaratory judgment that Katz requires the defendants' consent before republishing A Katz Walk (Counterclaim V). Counterclaims ¶¶ 5–25.

Second, the defendants bring three contract counterclaims: one for breach of contract (Counterclaim VI); one for account stated (Counterclaim VII); and one for quantum meruit (Counterclaim VIII). Id. ¶¶ 26–45.

Third, the defendants bring various employment-law counterclaims: one for minimum wage violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (Counterclaim X); one for violations of the New York State Minimum Wage Act (Counterclaim XI); one for illegal pay deductions under New York Labor Law § 193 (Counterclaim XII); one for failure to timely pay wages under New York Labor Law § 191(1) (Counterclaim XIII); one for violation under the New York City Freelance Isn't Free Act, N.Y.C. Admin. Code § 20-927, et seq. (Counterclaim XIV); and one for violations under the Maryland Wage Payment and Collection Law, Md. Lab. & Emp. Art. § 3-501, et seq. (Counterclaim XV).[2] Counterclaims ¶¶ 66–108.

Finally, the defendants bring a defamation claim against Katz (Counterclaim IX). Id. ¶¶ 46–65. Katz moves to dismiss each counterclaim except Counterclaim IX, the defamation counterclaim.

---

[2] Although the parties dispute the extent to which Peake and Tactile performed any work in Maryland, the defendants invoke the Maryland Wage Payment and Collection Law on the ground that Katz, the alleged employer, is a Maryland domiciliary.

## A.

The defendants first assert various copyright counterclaims. The Court addresses them in turn.

## 1.

The defendants' first counterclaim seeks to invalidate Katz's copyright registration for A Katz Walk on the ground that Katz's application for that copyright registration contained materially inaccurate information. Id. ¶¶ 5–7. But invalidation of a copyright registration is not a form of relief that federal courts can grant. "Nothing in the Copyright Act, nor any other federal statute, grants federal courts the power to cancel or nullify a copyright registration." Pastime LLC v. Schreiber, 705 F. Supp. 3d 95, 100 (S.D.N.Y. 2017); see also Vaad L'Hafotzas Sichos, Inc. v. Krinsky, 133 F. Supp. 3d 527, 537 (E.D.N.Y. 2015) (rejecting a party's request for "affirmative relief in the form of cancellation of the registration … [because] there is no precedent supporting the use of a claim for fraud on the Copyright Office as an affirmative cause of action").

The defendants argue that they are not attempting to cancel Katz's copyright registration, but rather are merely "seek[ing] relief under 17 U.S.C. § 411(b), which allows a court to request a determination from the Register of Copyrights where a registration was obtained with knowledge of inaccuracies." Defs.' Mem. Opp'n Mot. to Dismiss Counterclaims ("Opp'n") 22, ECF No. 83. Section 411(b), however, does not create a cause of action. It provides an exception to the general rule set out in § 411(a) that a certificate of registration satisfies the threshold requirement to bring an infringement action.

7

Palmer/Kane LLC v. Gareth Stevens Publ'g, No. 15-cv-7404, 2017 WL 3973957, at *9 (S.D.N.Y. Sep. 7, 2017) ("Pursuant to new Section 411(b)(1), a certificate of registration suffices as a prerequisite to bringing an infringement action 'regardless of whether the certificate contains any inaccurate information,' unless … 'the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.'"). "Section 411(b)(2) requires courts to seek the advice of the Register of Copyright before finding that this test is met and that a certificate of registration does not support an infringement action." Id. at *10. It does not create a freestanding cause of action.

Rather than seeking to cancel Katz's copyright registration, the defendants may instead have sought a declaratory judgment that Katz's copyright is invalid. "While the two concepts are undoubtedly related, the distinction matters." Brownstein v. Lindsay, 742 F.3d 55, 77 (3d Cir. 2014). "Holding that federal courts have the authority to cancel registrations would essentially be declaring that the judicial branch has the authority to order a legislative branch agency that is not a party to the litigation to take an affirmative action." Id. "A federal court's finding that a copyright is invalid, on the other hand, is a determination of ownership which does not disturb the registration of a copyright." Id. But the defendants do not seek a declaratory judgment that Katz's copyright is invalid. They instead expressly state that "[o]n the First Counterclaim, … the Court should request the Register of Copyrights to advise the

8

Court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration, and ... should direct the Copyright Office to invalidate the Plaintiff's copyright registration for <u>A Katz Walk</u>." Counterclaims at 38. Counterclaim I is therefore **dismissed without prejudice**.

**2.**

The defendants' second counterclaim is for a declaratory judgment that the defendants own <u>A Katz Walk</u> by assignment. According to the defendants, Katz executed a handwritten note purporting to assign her "entire artistic legacy, including all past, present, and future works, to the ownership Danielle R. Peake and Tactile Group." Answer ¶ 19. Katz allegedly confirmed this assignment in two videos recorded on the same day the note was executed. <u>Id.</u> ¶ 184.

Katz responds with two arguments. First, she contends that the written agreement was a testamentary note, not an assignment of ownership. And second, she argues that the written agreement mentioned only Peake, not Tactile, and that Peake added the reference to Tactile later. Reply Mem. Supp. Mot. to Dismiss Counterclaims ("Reply") 11, ECF No. 89.

These arguments dispute the factual allegations in the pleadings and therefore cannot be resolved at the motion-to-dismiss stage. The defendants adequately allege that the written note "was not a 'Testamentary Note' intended as a post-mortem gift, but, rather, was a formal assignment." Answer ¶ 19. At this stage, that factual allegation must be accepted as true. Similarly,

9

the defendants allege that the assignment was to "Danielle R. Peake and Tactile Group." Id. ¶ 19. Katz responds that Peake wrote "at the bottom of the Testamentary Note below Katz['s] signature 'Danielle Peak[e] for herself and Tactile Group, Inc.,'" which "does not change that fact that [Katz] did not assign anything to Tactile." Reply 11. But whether Peake added that line after the parties had reached an agreement is a factual question. At this stage, the defendants' factual allegations are assumed to be true. And because the defendants have pleaded factual allegations that Katz assigned the rights to A Katz Walk to both Peake and Tactile, Katz's motion to dismiss Counterclaim II is **denied**.

**3.**

The defendants' third and fourth counterclaims seek declaratory judgments that Peake is a joint author of A Katz Walk and that Peake made copyrightable contributions to A Katz Walk. Counterclaims ¶¶ 11–19. The fifth counterclaim seeks a declaratory judgment that Katz cannot republish A Katz Walk without the defendants' written consent. Id. ¶¶ 20–25.

The Copyright Act recognizes that a single work may have more than one "author," see 17 U.S.C. § 201(a), and defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "Joint authorship entitles the co-authors to equal undivided interests in the whole work," and "each joint author has the right to use or to license the

10

work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made." Thomson v. Larson, 147 F.3d 195, 199 (2d Cir. 1998).

The "touchstone" of joint authorship "is the intention at the time the writing is done that the parts be absorbed or combined into an integrated unit." Id. The Court of Appeals for the Second Circuit has articulated a two-prong test to assess co-authorship claims where, as in this case, the parties did not enter into a written agreement concerning the work. The party claiming co-authorship "bears the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors." Id. at 200 (citing Childress v. Taylor, 945 F.2d 500, 507 (2d Cir. 1991)).

Copyright protection extends to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "Ideas, refinements, and suggestions, standing alone, are not the subjects of copyrights." Maurizio v. Goldsmith, 84 F. Supp. 2d 455, 466 (S.D.N.Y. 2000) (quoting Erickson v. Trinity Theatre, Inc., 13 F.3d 1061, 1072 (7th Cir. 1994)). "For a contribution to be copyrightable, originality is also required." Id. To be original, an author's work must "(1) be independently created by the author and (2) possess at least a minimal degree of creativity." Id. at 466–67. "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991).

11

Peake alleges that she wrote independently copyrightable material that ended up in A Katz Walk. Counterclaims ¶ 17. Katz responds by arguing that these are merely "naked allegations," and that Peake "fails to allege that elements of any such pages are attributable to her alone and that they are copyrightable material." Reply 9. But that is inaccurate. Peake alleges that she wrote 45 pages, that Katz wrote 101 pages, and that the parties co-wrote the remaining 104 pages. Answer ¶ 155. Peake also expressly alleges that she "contributed substantial amounts of original text [to] the book." Id. ¶ 146. The Court must accept these allegations as true at the motion-to-dismiss stage. And taken as true, these allegations are sufficient to state a claim that Peake made independently copyrightable contributions to A Katz Walk. The defendants plead no factual allegations, however, that Tactile, as opposed to Peake, made any such contributions. Katz's motion to dismiss Counterclaim IV is therefore **denied** as to Peake but **granted** as to Tactile.

To state a claim for joint authorship, Peake must also plausibly allege that she and Katz intended to be co-authors. Peake expressly alleges that Katz "asked Peake, and Peake agreed, to co-write the book." Id. ¶ 145. Katz responds by pointing to several pieces of extrinsic evidence, such as the credit page of the Tactile publication and Tactile's copyright registration. Reply 8; see also Decl. of Vera Katz, Exs. B & C, ECF Nos. 79–3, 79–4. But these materials, which are not attached to or incorporated by reference into the defendants' pleadings, cannot be considered at the motion-to-dismiss stage. And in any event, these extrinsic materials would not conclusively establish that the

12

parties did not intend for Peake to co-author the memoir. The Court therefore must credit the defendants' allegations in their pleadings that Peake and Katz agreed to co-author the memoir. Katz's motion to dismiss Counterclaim III is **denied** as to Peake. However, because Tactile must have made an independently copyrightable contribution to be considered a joint author of the work, and, as explained above, the defendants have pleaded no factual allegations to support that contention, Katz's motion to dismiss Counterclaim III is **granted** as to Tactile.

Finally, the defendants seek a declaratory judgment that Katz cannot republish A Katz Walk without the defendants' written consent. This claim fails, however, because a joint author does not need the consent of the other joint authors before publishing a co-authored work. "Joint authorship entitles the co-authors to equal undivided interests in the whole work — in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made." Thomson, 147 F.3d at 199; see also Cmty. for Creative Non-Violence v. Reid, 846 F.2d 1485, 1498 (D.C. Cir. 1998) ("Joint authors co-owning copyright in a work are deemed to be tenants in common, with each having an independent right to use or license the copyright, subject only to a duty to account to the other co-owner for any profits earned thereby."). Counterclaim V is therefore **dismissed without prejudice.**

13

## B.

The defendants next bring counterclaims for breach of contract (Counterclaim VI), account stated (Counterclaim VII), and quantum meruit (Counterclaim VIII).

## 1.

Katz moves to dismiss all three of these counterclaims primarily on the ground that they are time-barred by the Maryland statute of limitations, which requires a plaintiff to bring contract claims within three years from the date they accrue. Mem. Supp. Mot. to Dismiss Counterclaims ("MTD") 8, ECF No. 80 (citing Md. Code. Ann., Cts. & Jud. Proc. § 5–101). According to Katz, any contract claim that accrued before August 6, 2021 — three years before the defendants first filed their counterclaims — is time-barred.

Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the state in which they sit. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). And under New York's choice-of-law rules, statutes of limitations are characterized as procedural, which means New York's statutes of limitations apply even if the substantive law of another jurisdiction governs the underlying claims. Architectronics, Inc. v. Control Sys., Inc., 935 F. Supp. 425, 431 (S.D.N.Y. 1996); see also Sun Oil v. Wortman, 486 U.S. 717, 722–29 (1988) (applying the forum state's statute of limitations to a claim governed by the substantive law of another state does not violate the Full Faith and Credit Clause). New York's limitations period for contract claims is six, rather than three, years. C.P.L.R. § 213(2).

14

Katz responds by pointing to New York's borrowing statute, C.P.L.R. § 202. According to Katz, when an action is based on a cause of action that accrues in another state, New York courts must consider the statutes of limitations of New York and that other state and apply the one with the shorter limitations period. In this case, that would be Maryland's.

This argument fails, however, because New York's borrowing statute creates an express exception "where the cause of action accrued in favor of a resident of" New York, in which case "the time limited by the laws of [New York] shall apply." C.P.L.R. § 202. Peake and Tactile are both citizens of New York, and therefore New York's longer statute of limitations applies, even if the cause of action accrued in Maryland.

Katz insists that even if New York's six-year statute of limitations applies, some amount of the defendants' alleged contract damages would have occurred before August 6, 2018. But the amount of damages that might be barred is a factual question that cannot be decided on a motion to dismiss.

### 2.

The defendants contend that Katz agreed to pay Peake and Tactile first $75 per hour, and then $100 per hour, for certain editing, publishing, and managing services. Katz then allegedly breached that agreement by failing to pay the defendants. Although the parties dispute whether the claim accrued under New York or Maryland law, "[t]he elements of a breach of contract claim under New York law and Maryland ... are the same, and so" the choice of law "do[es]

15

not affect" the analysis. Constellation Newenergy, Inc. v. Om Vegetable, Inc., No. 22-cv-3766, 2022 WL 3334707, at *3 n.2 (S.D.N.Y. Aug. 12, 2022). Under New York law, "there are four elements to a breach of contract claim: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Town & Country Linen Corp. v. Ingenious Designs LLC, 556 F. Supp. 3d 222, 291 (S.D.N.Y. 2021).[3]

Katz contends that the defendants' breach allegations are insufficiently specific to state a claim. For example, Katz argues that the defendants "failed to allege ... what hours [Peake] performed, and when they were performed." MTD 9. But the defendants need not plead allegations at that level of particularity to show a plausible entitlement to relief. The defendants have adequately alleged that they entered into an agreement with Katz, that Katz failed to pay the agreed compensation, and that the defendants consequently suffered damages. That is sufficient to show a plausible entitlement to relief on the defendants' breach-of-contract claim. Katz's motion to dismiss Counterclaim VI is therefore **denied.**

---

[3] Under Maryland law, the elements of a breach-of-contract claim are: "contractual obligation, breach, and damages." Kumar v. Dhanda, 198 Md. App. 337, 345 (2011), aff'd sub nom. Shailendra Kumar, P.A. v. Dhanda, 43 A.3d 1029 (Md. 2012).

**3.**

The defendants next contend in the alternative that they performed services — editing, publishing, and managing — for which Katz never paid. Thus, Katz unjustly enriched herself at the defendants' expense.

As with the defendants' breach-of-contract counterclaim, the parties do not clearly explain whether Maryland or New York law applies. But "the elements required to establish an unjust enrichment claim in Maryland ... are virtually identical" to the elements required to establish an unjust-enrichment claim in New York.[4] MMT Sales, Inc. v. Channel 53 Inc., WPGH Div., No. 92-cv-7207, 1993 WL 541242, at *4 n.6 (S.D.N.Y. Dec. 27, 1993) (Sotomayor, J.); see also Everhart v. Miles, 422 A.2d 28, 31–32 (Md. App. 1980) (discussing elements of unjust enrichment under Maryland law).

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefited; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). Katz argues that the defendants "failed to allege any dates of the alleged 'services'" or the "types of services provided to Ms. Katz." MTD 9. But the defendants do allege the types of services that they provided: they "provided to [Katz] services in good faith as [Katz's] manager, publicist, booking agent, editor, and publisher." Counterclaims ¶ 41. The approximate value of those services was "$224,000 plus expenses." Id. ¶ 44. The

---

[4] "Unjust enrichment and quantum meruit are not separate causes of action, and may be analyzed together as a single quasi-contract claim." Lebetkin v. Giray, No. 18-cv-8170, 2018 WL 6591252, at *7 (S.D.N.Y. Dec. 14, 2018).

defendants are not required to plead particularized factual allegations, such as the dates on which each service was provided, to show a plausible entitlement to relief on their quasi-contract claim. Accordingly, Katz's motion to dismiss Counterclaim VIII is **denied.**

**4.**

Finally, the defendants bring an account-stated claim. The parties are silent on the question whether New York or Maryland law governs this claim. "[W]here, as here, the parties are silent about the choice of law question, the Court may apply the law of the forum." Global Switching Inc. v. Kasper, No. 06-cv-412, 2006 WL 1800001, at *11 n.10 (E.D.N.Y. June 29, 2006).

An account-stated claim requires "an agreement between the parties to an account based upon prior transactions between them." LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999). "To state a claim for an account stated, the plaintiff must plead that: (1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated." IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009).

The defendants have failed adequately to plead an account-stated claim because they never allege that any specific account was presented to Katz. The defendants allege, at most, that Katz received a single invoice dated February 1, 2019 and that Katz separately acknowledged by text message that she owed the defendants more than $100,000. Counterclaims ¶¶ 31, 106. But these

18

allegations are insufficient to show that Katz was presented with any specific account, that she accepted it as correct, or that she promised to pay the specific amount stated. Counterclaim VII is therefore **dismissed without prejudice**.

## C.

Finally, the defendants bring various employment-law claims under Federal, New York, and Maryland law.

## 1.

The defendants first allege that Katz failed to pay the defendants wages as required by the Fair Labor Standards Act ("FLSA"). The FLSA defines an "employee" as "any individual employed by an employer"; it defines "employ" as "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), 203(g). The Court of Appeals for the Second Circuit has adopted an "economic reality" test to determine whether an individual is an employee within the meaning of the FLSA. The economic reality test considers the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

Brock v. Superior Care, 840 F.2d 1054, 1058–59 (2d Cir. 1988). No factor is dispositive; "rather, the test is based on a totality of the circumstances" analysis, with the ultimate question being whether the "workers depend upon

19

someone else's business for the opportunity to render service or are in business for themselves." Id. at 1059.

The defendants in this case have not adequately alleged that they are employees within the meaning of the statute. The defendants point to their allegations that Peake "was employed and/or performed work for Plaintiff within the meaning and scope of the Fair Labor Standards Act." Counterclaims ¶ 67. But this is a boilerplate legal conclusion, not a factual allegation. The defendants also argue that the "pleadings suggest a long-term, and exclusive relationship where Dr. Peake's services as manager, publicist, and editor were integral to the development and promotion of Katz's memoir," and that Katz "regularly questioned hours and authorized and approved payments." Opp'n 18 (emphasis in original). The defendants' pleadings, however, lack factual allegations supporting these assertions.

Because the defendants have not adequately pleaded that they were Katz's employees within the meaning of the FLSA, Counterclaim X is **dismissed without prejudice.**

### 2.

Next, the defendants assert various counterclaims under the New York Labor Law ("NYLL"). Specifically, the defendants allege violations under the New York Minimum Wage Act (Count XI), illegal pay deduction pursuant to NYLL § 193 (Count XII), and failure to timely pay wages pursuant to NYLL § 191(1).

20

"'Employee' is defined nearly identically (and with equal circularity) in the FLSA and NYLL." Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 922 (S.D.N.Y. 2013). Nevertheless, the Court of Appeals for the Second Circuit has noted that the analyses under these statutes may differ. Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013) ("Plaintiffs assert that the tests for 'employer' status are the same under the FLSA and the NYLL, but this question has not been answered by the New York Court of Appeals."). New York courts instead apply a common-law test, which, although "substantially similar" to the FLSA, Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 599 (E.D.N.Y. 2012), focuses on "the degree of control exercised by the purported employer" rather than the "economic reality of the situation," Velu v. Velocity Express, Inc., 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009).

Under the common-law test, the "critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Bynog v. Cipriani Grp., Inc., 802 N.E.2d 1090, 1092–93 (N.Y. 2003). "Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." Id. at 1093. "These factors, however, are not exhaustive: New York courts commonly consider additional factors." Hart, 967 F. Supp. 2d at 923. Accordingly, "notwithstanding Bynog's five factors, the most important consideration under the common law test is the degree to which the purported

21

employer exercises control in fact over the results produced or the means used to obtain them." <u>Gromina v. Kazmarck</u>, No. 22-cv-744, 2024 WL 4534710, at *7 (S.D.N.Y. Oct. 21, 2024).

The defendants in this case have pleaded no facts showing that any of the <u>Bynog</u> factors favors them, let alone that Katz meaningfully controlled "the results produced" by the defendants "or the means used to obtain them." <u>Id.</u> The defendants' allegation that "[a]t all relevant times, [they] were employed and/or performed work for [Katz] within the meaning and scope of the New York Labor Law" is a boilerplate legal conclusion, not a factual allegation. Counterclaims ¶ 67. Accordingly, Counterclaims XI (New York Minimum Wage Act violations), XII (illegal pay deduction pursuant to NYLL § 193), and XIII (failure to timely pay wages pursuant to NYLL § 191(1) are **dismissed without prejudice.**

### 3.

The defendants also allege that Katz "was obligated by Section 3–505(a) of the Maryland Wage Payment and Collection Law ... to pay Defendants all wages that Defendants had earned during their employment by" Katz. Counterclaim ¶ 101. The Maryland Wage Payment and Collection Law ("MWPCL") "requires an employer to pay its employees regularly while employed, and in full at the termination of employment." Peters v. Early Healthcare Giver, Inc., 97 A.3d 621, 625 (Md. 2014).

22

"The same test" that courts apply to determine whether a plaintiff qualifies as an employee under the FLSA — the "economic reality" test — "applies to the question of whether someone is 'employed' for purposes of the ... MWPCL." Bobb v. FinePoints Private Duty Healthcare, LLC, 794 F. Supp. 3d 343, 355 (D. Md. 2025). The defendants' MWPCL claim thus fails for the same reason their FLSA claim fails — the defendants have pleaded no non-conclusory factual allegations that they were employed by Katz in the relevant sense. Count XV (violation of MWPCL) is therefore **dismissed without prejudice.**

**4.**

Finally, the defendants allege that Katz violated the New York City Freelance Isn't Free Act ("FIFA"), N.Y.C. Admin. Code. § 20–929(a), by failing to pay the defendants within thirty days of the completion of their services. "FIFA regulates the relationship between 'freelance workers' and those who retain their services, the 'hiring party,' in New York City." Monzano-Moreno v. Libqual Fence Co., No. 18-cv-161, 2021 WL 730663, at *18 (E.D.N.Y. Feb. 5, 2021) (quoting N.Y.C. Admin. Code § 20–927).

FIFA defines a "freelance worker" as "any natural person or any organization composed of no more than one natural person, whether or not incorporated or employing a trade name, that is hired or retained as an independent contractor by a hiring party to provide services in exchange for compensation." N.Y.C. Admin. Code § 20–927. FIFA "requires a written

23

contract for services of $800 or more." <u>Gordon v. Equitas Cap. Grp., LLC</u>, 24-cv-6789, 2025 WL 2771708, at *7 (S.D.N.Y. Sep. 29, 2025) (citing N.Y.C. Admin. Code. § 20–928(a)); <u>see also</u> <u>Chen v. Romona Keveza Collection LLC</u>, 173 N.Y.S.3d 201, 204 (App. Div. 2022). That written contract must include: (1) "[t]he name and mailing address of both the hiring party and the freelance worker;" (2) "[a]n itemization of all services to be provided by the freelance worker, the value and services to be provided pursuant to the contract and the rate and method of compensation; and" (3) "[t]he date on which the hiring party must pay the contracted compensation or the mechanism by which such date will be determined." N.Y.C. Admin. Code. § 20–928(b).

Although the defendants in this case allege that they were treated as freelancers, Counterclaims ¶ 92, they have "failed to establish an enforceable contract as required by Section 20–928(a)," <u>Gordon</u>, 2025 WL 2771708, at *7. The defendants allege that Katz agreed to compensate Peake at $75 per hour, and then, at some later point, $100 per hour, in exchange for Peake's work as Katz's "manager, publicist, booking agent, editor, and publisher." Counterclaim ¶¶ 28–32. But the defendants never allege that the parties entered into a written contract that meets the requirements of § 20–928. Because the defendants have "failed to establish the existence of an enforceable contract" that satisfies the requirements of § 20–928, the defendants are "not entitled to damages under FIFA." <u>Provenzano v. Orwel</u>, 223 N.Y.S.3d 520, at *7 (N.Y. Civ. Ct. 2024) (Table); <u>see also</u> <u>Gordon</u>, 2025 WL 2771708, at *7 (same).

24

Tactile's FIFA claim also fails for the independent reason that the defendants have not alleged that Tactile is an "organization composed of no more than one natural person." N.Y.C. Admin. Code § 20–927. Other than alleging that Tactile is "a new York corporation with offices in New York," and that "Peake is the President of Tactile Group," the defendants' pleadings are silent about Tactile's structure and composition. Answer ¶ 135.

Counterclaim XIV is therefore **dismissed without prejudice.**

### CONCLUSION

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, Katz's motion to dismiss is **granted in part** and **denied in part.**

The Clerk is directed to close ECF Nos. 79 and 100.

**SO ORDERED.**

Dated:    **New York, New York**
           **May 7, 2026**

_____
          **John G. Koeltl**
     **United States District Judge**

25